916 F.2d 171
 66 A.F.T.R.2d 90-5721, 59 USLW 2270, 90-2
USTC P 50,538,
17 Fed.R.Serv.3d 1164
 Bernard J. HILLIG; Barbara J. Hillig; Louis D. Napoli;
Carol B. Napoli; Barry G. Brotman; Elizabeth M.
Brotman; Alfred P. Coccaro; Elizabeth
M. Coccaro, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
Joel B. BOWERS; Susan G. Bowers; Robert L. Hamm,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 89-2224, 90-2021.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1990.
Decided Oct. 16, 1990.
As Amended Nov. 6, 1990.
 
 Stephen Richard Mysliwiec, argued (James G. Rafferty, Paul P. Andrews, on brief), Piper & Marbury, Washington, D.C., for petitioners-appellants.
 Calvin Carl Curtis, argued (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, on brief), Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.
 Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 In this appeal, taxpayers assign error to the Tax Court's dismissal of their petitions as a sanction for violations of Tax Court Rules by the taxpayers' counsel. We vacate and remand for reinstatement of the petitions and consideration of sanctions against their lawyers.
 
 
 2
 * The taxpayers, Bernard J. Hillig, Louis D. Napoli, Joel B. Bowers, Barry G. Brotman, Alfred P. Coccaro, and Robert L. Hamm are physicians who formed a partnership to purchase and lease medical equipment. The physicians also are shareholders of a professional services corporation, formed for the practice of medicine.
 
 
 3
 The Commissioner served the taxpayers in June 1988 with notices of deficiency for tax years 1981, 1982, and 1984. According to the notices, the taxpayers had taken improper investment tax credits for medical equipment purportedly leased by the partnership to the corporation. The taxpayers retained their corporate attorney to contest the notices. Because he lacked experience in Tax Court litigation, the taxpayers through their corporate counsel engaged special tax counsel. The attorneys filed petitions contesting the notices in September 1988.
 
 
 4
 In December 1988 the Tax Court issued a notice setting the case for trial on May 22, 1989. The notice warned that failure to cooperate may result in dismissal of the case. The court also issued its standing pretrial order, which required the parties to stipulate undisputed facts. The order also required that 15 days before the trial the parties file with the court and exchange with each other documentary and written evidence, a trial memorandum, and reports of any expert witness. It stated: "If any unexcused failure to comply with this Order adversely affects the timing or conduct of the trial, the Court may impose appropriate sanctions, including dismissal, to prevent prejudice to the other party or imposition on the Court."
 
 
 5
 In January 1989, informal discovery began with a letter from the Commissioner to the taxpayers' counsel requesting eight categories of documents. The court held a discovery conference in February. Counsel for the Commissioner claims that taxpayers' counsel agreed to furnish the requested documents by March 13, 1989. Taxpayers claim that the Commissioner's counsel agreed to send a revised list of documents that had not been reviewed in the tax audit.
 
 
 6
 On March 15, 1989, the Commissioner's counsel sent taxpayers' counsel a list of documents in his possession. The list included some of the categories of documents requested in January. The Commissioner's efforts to get the remaining documents through informal discovery channels proved futile. On March 23, 1989, the Commissioner's counsel filed a formal request asking for the same eight categories of documents and answers to interrogatories by April 24. Taxpayers' counsel did not respond to this request.
 
 
 7
 On April 27, the Commissioner moved to compel production of documents, asking for dismissal if counsel did not comply. The Commissioner's counsel mailed a proposed stipulation of facts on May 2 but received no response. Taxpayers' counsel did not file a trial memorandum or expert witness report by the pretrial order deadline.
 
 
 8
 On May 10, the court granted the Commissioner's motion to compel production of the documents. On May 16, taxpayers' counsel responded by a letter that included two documents and indicated that they would forward an expert witness report. The letter explained that they would send other documents when located and that the Commissioner had the remaining documents. Additionally, taxpayers' counsel filed motions for a continuance and to vacate the court's order to compel. The tax counsel moved to withdraw.
 
 
 9
 On May 17, in a hearing before the Tax Court, the corporate attorney explained that because of his inexperience litigating before the Tax Court, he assumed that the tax attorney had taken responsibility for the litigation. The tax attorney maintained that he was unable to get the documents he needed from the corporate attorney. The delays and violations of the court rules apparently stemmed from the miscommunication between taxpayers' counsel. The court stated at the hearing: "The conduct of counsel for Petitioners in this case is inexcusable.... The two of you are basically pointing fingers at each other and saying that each other of you is responsible for the failure to act in accordance with the Court orders."
 
 
 10
 The court dismissed the case under Tax Court Rule 123(b) for failure to prosecute and under Tax Court Rule 104(c)(3) for failure to comply with the order to compel production of documents. The court subsequently denied taxpayers' motion to vacate. In its opinion, it explained that taxpayers' counsel had violated the order compelling discovery, ignored a proposed stipulation of fact in violation of Tax Court Rule 91(a)(1), violated the standing pretrial order by failing to submit a trial memorandum, failed to submit an expert witness report in violation of Tax Court Rule 143(f), and moved for a continuance five days prior to trial. According to the court, "dismissal was justified in order to protect the integrity of the Court's rules and orders."
 
 II
 
 11
 The legal standard for involuntary dismissals under Federal Rule of Civil Procedure 41(b) governs Tax Court dismissals under Tax Court Rule 123(b). Crandall v. Commissioner of Internal Revenue, 650 F.2d 659, 660 (5th Cir.1981). "While the power to dismiss clearly lies with the district courts, it is appropriately exercised only with restraint. 'Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits.' " Dove v. CODESCO, 569 F.2d 807, 810 (4th Cir.1978) (quoting Reizakis v. Loy, 490 F.2d 1132, 1135 (4th Cir.1974)). This Circuit requires that the trial court consider four factors before dismissing a case for failure to prosecute: (1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal. See, e.g., Herbert v. Saffell, 877 F.2d 267, 270 (4th Cir.1989). The standard of our review is whether the Tax Court abused its discretion. Davis v. Williams, 588 F.2d 69, 70 (4th Cir.1978).
 
 
 12
 A dismissal sanction is usually inappropriate when it unjustly penalizes a blameless client for the attorney's behavior. See Dove, 569 F.2d at 810; McCargo v. Hedrick, 545 F.2d 393, 396 (4th Cir.1976); Reizakis, 490 F.2d at 1135; see also Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1077-79 (D.C.Cir.1986). There is no evidence in this record that the taxpayers were responsible for their attorneys' noncompliance. Hillig, who was the partner responsible for dealing with counsel, stated in an affidavit filed in support of the taxpayers' postjudgment motion:
 
 
 13
 3. I do not know whether general corporate counsel ... or our trial counsel in this case ... was responsible for contacting us about respondent's Request for Production of Documents. I had assumed that any such contact would come from [our trial counsel]. However, the fact of the matter is that neither of them ever made me or anyone else in the partnership aware of any such request. We have always been ready, willing, and able to produce whatever documents are required to prosecute these cases.
 
 
 14
 4. Neither of our counsel ever made us aware of a Motion or Order to Compel Production of Documents in these cases.
 
 
 15
 5. Until I learned of the Court's dismissal of these cases after the May 17, 1989, hearing, I had assumed that these cases were proceeding normally and on schedule.
 
 
 16
 The conduct of taxpayers' attorneys undoubtedly impaired the Commissioner's ability to prepare for trial. The prejudice, however, was not irreparable. It did not arise from a lengthy delay making testimonial evidence stale.
 
 
 17
 The noncompliance of counsel in this case spanned a period of three months. It does not approach the history of delay present in Link v. Wabash R.R. Co., 370 U.S. 626, 628 n. 2, 633, 82 S.Ct. 1386, 1387 n. 2, 1390, 8 L.Ed.2d 734 (1962). See also Davis, 588 F.2d at 70-71. The record indicates sloppiness and a lack of communication, but it does not support a conclusion that the delay was deliberate. See Herbert, 877 F.2d at 270; Chandler Leasing Corp. v. Lopez, 669 F.2d 919, 920 (4th Cir.1982).
 
 
 18
 The Tax Court did not impose any less drastic sanctions before dismissal, although the Commissioner's counsel suggested possible lesser sanctions at the hearing. We conclude that a sanction tailored to punish the attorneys instead of the taxpayers would reconcile better the strong policy favoring resolving cases on the merits with the court's legitimate concern for deterring noncompliance with its rules. See Dove, 569 F.2d at 810.
 
 III
 
 19
 The Tax Court also dismissed the case under Tax Court Rule 104(c)(3), which is analogous to Federal Rule of Civil Procedure 37(d). Fox v. Commissioner of Internal Revenue, 718 F.2d 251, 255 (7th Cir.1983). A court must consider a somewhat similar list of four factors before dismissing a case under this rule: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance caused the adversary; (3) the need for deterring the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions. Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir.1989). Dismissal under this rule is reserved for "only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules." Mutual Fed. Sav. & Loan Ass'n, 872 F.2d at 92; see also Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 504 (4th Cir.1977). There is no evidence in the record of bad faith and, as discussed in Part II above, the circumstances of this case do not merit the harsh sanction of dismissal for failure to comply with a discovery order.
 
 IV
 
 20
 We do not condone the conduct of taxpayers' counsel. The Tax Court rightly determined that their conduct justified the imposition of sanctions. We hold only that sanctions should not have been imposed on the taxpayers. Therefore, we vacate the judgment of dismissal and remand for reinstatement of the case. Also, the Tax Court may consider imposing sanctions on the taxpayers' counsel. Each side, having partially prevailed, shall bear its own costs and share the cost of the appendix.
 
 
 21
 VACATED AND REMANDED.